UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERVE, L.L.C.,

                              Plaintiff,

                                                      CIVIL CASE NO. 05-40032

v.

THALES E-TRANSACTIONS, INC.,          HONORABLE PAUL V. GADOLA
                                                              U.S. DISTRICT COURT
                                Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff Verve, L.L.C. ("Verve") first filed this patent infringement action against Thales E-Transactions, Inc. ("Thales") and several other defendants on February 4, 2004 in the Western District of Texas. By an order of the Honorable Lee Yeakel, U.S. District Judge for the Western District of Texas, the claims against Thales were severed from the case and transferred to this Court in the Eastern District of Michigan. Before the Court is Thales's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons set out below, the Court will grant Defendant Thales's motion to dismiss.

**I.     Background**

The dispute between the parties centers on United States Patent 4,562,341 ("the '341 patent"). Omron Corporation ("Omron") is the original holder of the '341 patent. On October 14, 2003, Omron allegedly assigned all rights and interests in the '341 patent to Verve in a five-page Patent Assignment Agreement No. 101403. Section 2.1 of this October 2003 agreement states:

Omron agrees to assign all right, title and interest in the patents, including any and

all accrued causes of action for damages for infringement thereof. In furtherance of this agreement, Omron hereby acknowledges that, from the effective date forward, Verve has succeeded to all of Omron's right, title, and standing to receive all rights and benefits pertaining to the patents, to institute and prosecute all suits and proceedings, and to take all actions that Verve, in its sole discretion may deem necessary or proper to collect, assert, or enforce any claim, right, or title of any kind under the patents, whether arising before or after the effective date.

The agreement was recorded with the United States Patent and Trademark Office on October 15, 2003 by means of a one-page document. The recording document filed stated that "full and exclusive" rights in the '341 patent were assigned by Omron to Verve.

On February 15, 2004, the '341 patent expired. On March 19, 2004, after the patent expiration, Verve entered into a Patent Assignment and License Agreement No. 031804 with Omron. On April 1, 2004, an addendum to the March 19, 2004 agreement, Addendum No. 1-033004, was created. This March 2004 agreement and its addendum covered newly assigned and licensed patents, as well as "previously assigned" patents, which included the '341 patent. The terms of the March 2004 agreement and the April 2004 addendum were more expansive in favor of Omron than the terms of the October 2003 agreement, granting Omron more rights than what Omron retained under the earlier agreement.

As the alleged owner of the '341 patent, Verve filed this suit against Thales for patent infringement. Arguing that Verve lacked standing to bring the suit, Thales filed the instant motion to dismiss.

## II.     Legal Standards

The question of whether a plaintiff has standing to file suit is a jurisdictional question. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). Under the Patent Act, only a

"patentee" has the right to sue for the infringement of its patent. 35 U.S.C. § 281. A patentee "includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d).

An assignment of the patent is the full and complete transfer of all the rights in the patent, or in a part of a patent, to another party, while a transfer of anything less than the full and complete rights is a license. *See Enzo APA & Son v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.Cir.1998) ("Any less than a complete transfer of these rights is merely a license, in which case the title remains with the owner of the patent . . . ."). An assignee of the patent has standing to bring suit in its name for patent infringement because it is a successor in title to the patentee. A licensee, however, "is not entitled to bring suit in its own name as a patentee, unless the licensee holds 'all substantial rights' under the patent. Such a licensee is in effect an 'assignee' and therefore a patentee." *Textile Prods. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874-75 (Fed. Cir. 1991)). An entity without all substantial rights but still holding a license on a patent with the patentee's promise that all others will be excluded from obtaining a similar license is an exclusive licensee, and can only sue as a co-plaintiff with the patentee. *Id.* at 1484. Where the patentee reserves the right to grant licenses to others, the licensee holds a nonexclusive license and consequently "suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee." *Ortho Pharmaceutical Corp. v. Genetics Inst.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995). "The key question for determining standing of a licensee is whether the licensee as a matter of law has an exclusive property interest in the patent itself, not whether the licensee in fact has been harmed by a third-party

infringer." *Id.* (quoting *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 808 F. Supp. 894, 904 n.14 (D. Mass. 1992).

### III.   Analysis

Because standing must exist at the time the suit was filed, the Court will look to the October 2003 agreement to determine whether Verve had standing to bring the suit.  In order to determine the status of Verve as an assignee or licensee of the '371 patent, the Court must not consider the mere language of the contract but rather, must consider the intention of the parties and the actual substantive rights that were granted by the October 2003 agreement.  *See Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions."); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378 (Fed. Cir. 2000) ("To determine whether a license agreement has conveyed all substantial rights in a patent, and is thus tantamount to an assignment, we must ascertain the intention of the parties and examine the substance of what was granted.").

Section 2.1 of the October 2003 agreement states that "Verve has succeeded to all of OMRON's right, title, and standing to receive all rights and benefits pertaining to the Patents, to institute and prosecute all suit and proceedings . . . ."  This mere declaration that all rights to the patent have been assigned to Verve, however, is insufficient to establish that Verve has "substantial rights" to the patent.  Additionally, the declaration that Verve has the right to sue is insufficient to confer standing, absent actual substantial property interests in the patent.  *See Ortho Pharmaceutical Corp.* at 1034 ("However, a contract cannot change the statutory requirement for suit to be brought

4

by the 'patentee.' By the same token, a right to sue clause cannot negate the requirement that, for co-plaintiff standing, a licensee must have beneficial ownership of some of the patentee's proprietary rights. A patentee may not give a right to sue to a party who has no proprietary interest in the patent.").

The substance of the October 2003 agreement indicates that Omron retained significant rights. Section 2.3 of this agreement states:

> Upon execution of this assignment document, Verve grants back to OMRON and OMRON's customers/clients to be agreed upon by Verve and OMRON a non-exclusive, worldwide, irrevocable, perpetual, royalty-free, fully paid-up, license under the Patents to reproduce, make, have made, use, import, offer for sale, and sell any products or services.

By the terms of the contract, Omron retained a license, which is a right to make, use and sell, for its own benefit, products and services related to the '341 patent. Furthermore, all of Omron's customers similarly had the right to make, use and sell products and services related to the '341 patent. In addition, any future customer of Omron, so designated by Omron and Verve, would also enjoy a "worldwide, irrevocable, perpetual, royalty-free, fully paid-up" license on the patent. Thus, Omron effectively retained a right to grant licenses to its customers, making Verve unable to exclude Omron or any of Omron's present or future customers from the use of the patent. While the agreement does state that the right to grant licenses is limited to Omron's customers "agreed upon by Verve and Omron," the Court finds that, when considering the entire contract and the intention of the parties as evidenced by the record, this language is not strong enough to significantly limit the rights retained by Omron or to grant substantial rights to Verve.

In addition to these rights in Section 2.3, other provisions of the October 2003 contract

indicate that Omron retained other additional rights and control of the '341 patent:

    1.  Under Section 3.1, Omron was to be paid a substantial portion of the licensing revenue.

    2.  Under Sections 1.6 and 3.2, Omron was required to share the burden of any litigation expenses Verve incurred in collecting revenue from the patent, as these expenses were "applied deductions."

    3.  Under Section 3.2, Verve was effectively unable to exercise the right to indulge infringements, as Verve was required to use "best efforts to maximize" the licensing revenue.

    4.  Under Section 3.2, Verve was required to provide Omron with quarterly accounting reports, was required to maintain thorough records, and was required to permit Omron's review and examination of Verve's records and accounts.

Therefore, for these reasons, the Court finds that the parties clearly intended to have Omron retain a license to the patent for itself and for its customers and to retain a certain amount of control over the patent, while relying on Verve to enforce Omron's patents and to collect licensing revenue. The Court also notes that the supplemental briefings filed by Thales on November 11, 2005 support this finding of the nature of Verve's relationship with Omron.

By retaining the effective control of the use of the patent for itself and its customers, Omron failed to assign "all substantial rights" to Verve or even to make Verve the exclusive licensee of the '371 patent. Therefore, because Verve was not given substantial rights to the '371 patent under the October 2003 agreement, Verve lacked standing to bring suit in this case when it was first filed on February 4, 2004. As the Court finds that Verve lacked standing to sue under the October 2003 agreement, the Court need not consider the merits of the other arguments of the parties, nor make

a determination of the effects of the patent expiration or the March 2004 agreement.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant Thales's motion to dismiss [docket entry 10] is **GRANTED**.

**IT IS FURTHER ORDERED** that this civil action, Case No. 05-40032, is **DISMISSED**.

**SO ORDERED.**

Dated:  March 27, 2006                              s/Paul V. Gadola
                                                    HONORABLE PAUL V. GADOLA
                                                    UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on  March 28, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
          George T. Schooff; Christopher S. Walton          , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                              .

                                                    s/Ruth A. Brissaud
                                                    Ruth A. Brissaud, Case Manager
                                                    (810) 341-7845